UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 19-10375-RGS

UNITED STATES OF AMERICA

v.

MICHAEL PRIDGEN

MEMORANDUM AND ORDER ON
AN APPEAL OF THE MAGISTRATE JUDGE'S
ORDER OF RELEASE ON CONDITIONS

April 29, 2020

STEARNS, D.J.

This case is before the court on the government's appeal of an order entered by Magistrate Judge Boal on April 17, 2020, tentatively releasing defendant Michael Pridgen to temporary home confinement in Atlanta, Georgia, pending the disposition of his criminal case.   Pridgen is charged with two counts of distribution and possession with intent to distribute "crack" cocaine and one count of distribution and possession with intent to distribute cocaine base and fentanyl, all in violation of 21 U.S.C. § 841(a)(1), and one count of distribution and possession with intent to distribute cocaine base in a public housing complex in violation of 21 U.S.C. § 860.

Because of the "logistical" complexities involved in finding a suitable place of home confinement for Pridgen, Magistrate Judge Boal held a second hearing on April 23, 2020, at which she approved his relocation to his fiancé's apartment in Atlanta.   She then stayed her order briefly to permit

the government to take an appeal to this court, which it did.   This court continued the stay and heard the appeal on Monday, April 27, 2020, by teleconference with Pridgen participating.   For the following reasons, the order of the Magistrate Judge is reversed and Pridgen is ordered detained.[1]

The following essentials are drawn from Magistrate Judge Boal's order and the exhibits that were tendered at the detention hearing.   Because probable cause exists to believe that Pridgen committed at least one controlled substance offense with a maximum term of imprisonment of ten years or more, there is a rebuttable presumption that he poses a danger to the community and a risk of flight.[2]   *See* 18 U.S.C. § 3142(e).   There is little, if anything, in Pridgen's criminal history that suggests that the presumption is undeserved.   As recited in the Magistrate Judge's order, Pridgen has been convicted for larceny, assault and battery with a dangerous weapon with intent to rob, being a felon in possession of a firearm, and possessing a

---

[1] In discharge of its obligation to undertake a *de novo* review of the proceedings before the Magistrate Judge, the court has obtained and read the transcript of the detention hearing, the pleadings, and the exhibits that were proffered during that hearing.   Pridgen subsequently filed three additional exhibits for this court's consideration, which the court also has reviewed.

[2] On the issue of probable cause, the government noted six videotaped recordings of Pridgen selling drugs on different occasions on the grounds of the Bromley-Heath project, as well as a quantity of drugs found in his possession when he was arrested.

prohibited object as an inmate.   Order, Dkt # 45 at 4.[3]   Pridgen, who is currently confined at the Plymouth House of Corrections, suffers from obesity and hypertension.   The only basis I can discern from the Magistrate Judge's order supporting Pridgen's release is her finding that "Pridgen is at a higher risk of serious complications and even death were he to contract COVID-19" (than presumably the average inmate), and that alone is a sufficiently "compelling circumstance that tilts the balance in favor of his release on a temporary basis for sixty days or until his plea date, whichever is sooner . . . ."   *Id.* at 5-6.

There are three reasons why I disagree with the Magistrate Judge's order.   First, there is no medical evidence in the record specific to Pridgen that supports the finding that Pridgen faces a risk of contracting COVID-19 that is of a magnitude appreciably greater than the many persons in the general population who suffer from hypertension.[4]   Nor do I believe that an interim confinement in a small apartment in a housing complex in Atlanta

---

[3] As the government pointed out at the detention hearing, Pridgen's was no run-of-the-mine firearms offense but involved a shooting that took place outside of the Roxbury District Courthouse in broad daylight.   Pridgen was convicted by a federal jury and given a seven-year federal sentence.   *See United States v. Pridgen*, 518 F.3d 87 (1st Cir. 2008).   The government also pointed to evidence of Pridgen's long association with the notoriously violent Heath Street Gang.

[4] As cited by the government at the appeal hearing, the Centers for Disease Control reports that 33.2% of American adults suffer from hypertension.   *See* https://www.cdc.gov/nchs/fastats/hypertension.htm

with his fiancé and her two children confers any medical benefit on Pridgen.[5]
If anything, it takes Pridgen out of a setting in which medical services are
readily available and places him in one where likely they are not.   Although
the Magistrate Judge points to two instances where Pridgen was taken from
the Plymouth House of Corrections to a local hospital after complaints of
chest pain, neither instance appears to have involved an acute medical
emergency.

Second, I find the logistical arrangements approved by the Magistrate
Judge to be impractical and potentially self-defeating.   There is no assured
means of monitoring Pridgen in an Atlanta environment where probationary
services are thinly stretched (as they are here).   Nor am I confident that
Pridgen can be returned to Massachusetts to enter a plea or face trial without
serious safety concerns and scheduling complications, given the parlous
state of commercial air travel and the quarantine rules that are likely to
remain in effect in Massachusetts for the foreseeable future.

Third, and this is critical: I believe that the Magistrate Judge

---

[5] The most recent report of the Supreme Judicial Court's Special
Master (dated April 27, 2020) indicates that there are no confirmed cases of
COVID-19 among inmates and detainees at the Plymouth House of
Corrections.   The court takes judicial notice of the fact that the Governor of
the State of Georgia, despite Executive Branch and medical advice to the
contrary, has chosen to relax the state's social distancing rules for the
foreseeable future.   It is not at all clear that evacuating Pridgen from a
presently safe environment to one that is potentially unsafe serves to
alleviate any concern for Pridgen's health.

underweighted the interests of society in the deterrence and punishment functions of the criminal justice system in Pridgen's case.    I understand that these are frightening times and that exceptional times can demand exceptional measures.    And I am mindful of Chief Justice Gants's admonition to state trial judges in *Christie v. Commonwealth*, 484 Mass. 397, 398 (2020), that "in conducting . . . de novo review [of a detention decision], a judge must give careful consideration not only to the risks posed by releasing the defendant - flight, danger to others or to the community, and likelihood of further criminal acts - but also, during this pandemic, to the risk that the defendant might die or become seriously ill if kept in custody." Pridgen is, as the statutory presumption explicitly states, and the Magistrate Judge implicitly held, a danger to the community.    And his medical circumstances are not so exceptional as to tilt the balance in favor of his temporary release.

## ORDER

For the foregoing reasons, the Magistrate Judge's Order is REVERSED, and Pridgen is ORDERED DETAINED pending resolution of his case.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE