UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 19-cr-10375-RGS |
| ) | |
| MICHAEL PRIDGEN ) | |
| Defendant ) | |
| ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Procedural History

On September 10, 2019, Michael Pridgen was arrested in the present case. He was indicted on October 3, 2019. He entered a guilty plea to these indictments on May 21, 2020. He has been in federal custody since his arrest.

The Sentencing Guideline Calculation:

The defendant agrees with the United States Probation and Pretrial Services Department that his criminal history score is six, placing him in Category III. PSR ¶ 53, 54. The defendant further agrees that his base offense level is 26, with adjustments for acceptance of responsibility rendering a total offense level of 23. PSR ¶¶ 36-42. He falls within the advisory sentencing range of 57 – 71 months.

The Plea Agreement:

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the U.S. Attorney and Defendant agree that the following is a reasonable and appropriate disposition of this case:

(a) incarceration for 54 months;

(b) 72 months of supervised release, including the geographic restriction attached as Attachment A to the plea agreement;

(c) a mandatory special assessment of $400 ($100 on each count), which Defendant must pay to the Clerk of the Court on or before the date of sentencing (unless Defendant establishes to the Court's satisfaction that Defendant is unable to do so); and

(d) forfeiture of various cell phones and money, as set forth in ¶7 of the plea agreement.

The Nature and Circumstances of the Offense (§ 3553(a)(1)):

The defendant relies upon the facts as they are outlined in the PSR. He accepts responsibility and appreciates the wrongfulness and illegality of his decision to sell drugs. Without seeking to excuse or minimize this, it is notable that Mr. Pridgen himself was suffering from addiction when he was arrested in this case. He was actively addicted to heroin and cocaine, drugs he has utilized over the years to self-medicate both physical pain and emotional trauma and PTSD. He was a daily user, struggling to hide his increasing desperation from his fiancée. He went through detox in custody at the time of his arrest, and he has experienced the (often painful) clarity that comes with being drug free since that time.

The History and Characteristics of the Defendant (§ 3553(a)(1)):

Michael Pridgen is 36 years old. He is the son of a single mother, Ruby Holmes, who died when he was still a young man of 19. He grew up in the Bromley Heath Projects in Boston, a notoriously dangerous and crime-ridden neighborhood. His mother never married; her children had different fathers, all of whom failed to support her as she raised her children. She often worked two jobs at once and struggled to support herself and the kids.

Mr. Pridgen's siblings were older and left the home early, leaving him essentially an only child. When he was about 13 years old, Ms. Holmes began having seizures. She would fall to the floor, convulse, and would be unresponsive for long periods of time. She would have trouble breathing after the episodes. Mr. Pridgen witnessed these episodes when he was home alone with his mother and would call 911 for help. His mother was the only person in his family he was

close to. The episodes frightened him and made him worry for his mother's health. He often thought that she would die from her "epilepsy," or from her "asthma." In fact, he later learned that the seizures were the result of a slow-growing, inoperable brain tumor, that became progressively worse until eventually it led to his mother's death in November, 2003.

Mr. Pridgen's mother worked very long hours when he was a child. He was often left alone or in the care of an aunt. The Bromley Heath Project was not a good place for a young boy to be by himself. In 1995, when he was 11, Mr. Pridgen's cousin had his throat slit by some other youths. Around that same time, a friend of his, 17 years old, was shot to death. Soon after that, another of his cousins was murdered. Mr. Pridgen's trouble with the law began when he was sixteen, in 2000, when he was arrested for shoplifting. He was committed to DYS for this offense, an outsized disposition for a shoplifting charge.

Records from the Department of Youth Services indicate that his mother, Ms. Holmes, reported to a caseworker that he was "a sweet and attentive child who sometimes help[ed] out with household chores" but that he sometimes spent the night with friends in the Orchard Park projects against her wishes. She confirmed that he "express[ed] a lot of concern and [was] overall very caring" when she had seizures. She said that he pretended that it did not matter "that his father [was] not in his life, but she [knew] that it bother[ed] him a lot." She also reported that in addition to his feelings of loss about his father, her mother had died within the last year, and Mr. Pridgen was very close to her. She also reported that the deaths of his cousins and friends had greatly affected him. Ms. Holmes told the caseworker that she hoped that if he were committed to the Department of Youth Services, he would find direction. It seemed that because of her long work hours she was not able to supervise him as much as she wanted to.

It should surprise no one that Mr. Pridgen did not "find direction" while institutionalized at the Department of Youth Services. From November, 2000 to May of 2002, when he "aged out" of DYS, he was sent to various "placements," and periodically released to his mother, without making any real progress toward educational goals or job security. Although during this time he held a succession of short-term jobs, he was unable to find and maintain stable employment.

In July, 2001, Mr. Pridgen's daughter, Shaki Ayana Hall Pridgen, was born. Her mother was his girlfriend, Chante Hall. Ms. Hall reported to Mr. Pridgen's prior legal counsel that Mr. Pridgen was a very attentive and patient father who provided her with financial support and help with childcare when he could. When Mr. Pridgen was incarcerated on his prior federal sentence, he worked to maintain his parental bond with his daughter. Shaki developed a strong attachment to him that survives for her today, at age 19.

In September, 2002, Mr. Pridgen was diagnosed as having ameloblastoma, a condition in which non-malignant tumors grow in an out of control fashion. He had a large tumor removed from his jaw in September, 2003, a painful procedure in which a segment of his jaw was removed and replaced with a metal plate. Afterward, his jaw was wired shut for months.

In November 2003, Mr. Pridgen's mother died from a brain tumor. He was 19 years old. He came to the house and discovered her body on the living room floor. After his mother's death, Mr. Pridgen became extremely depressed. He experienced recurrent dreams of finding her body. He felt that he could have helped her had he been at home. He couldn't sleep and found it difficult to talk to anyone about what had happened. This depression was not treated with counseling or medication.

In 2004 Mr. Pridgen was arrested and convicted in the District of Massachusetts on a Felon in Possession of a Firearm charge, for which he received an 84-month sentence.  Mr. Pridgen experienced both successes and setbacks while incarcerated, and was ultimately released to supervision in August 2012 – August 2015.  PSR ¶51, 52.  He completed his supervision period successfully, and worked to rebuild his life.

Mr. Pridgen met his fiancée, Alisha Howard, in approximately 2015.  The couple has two children together, Mikel (age 3) and Alisha (age 2) in addition to Ms. Howard's son Jahki (age 14) from a previous relationship, whom Mr. Pridgen considers his own son.  This family unit has been the single greatest source of stability and happiness that Mr. Pridgen has ever experienced, and nothing like the life he lived as a child growing up in Boston.  The couple remain devoted to each other and are in regular and frequent contact since his arrest.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense and to Afford Adequate Deterrence to Criminal Conduct, and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner (§3553 (a) (2)).</u>

The sentence of 54 months is a meaningfully long time for Mr. Pridgen, as it poses an abrupt interruption to the life he thought he was creating with his young family.   The separation from his fiancée and children, the suspension of their wedding plans, and his personal reckoning with his addiction has profoundly affected Mr. Pridgen's outlook on life and his future going forward.  While he understands that incarceration is appropriate, it comes with the additional fear that his significant health history, including persistent hypertension, renders him vulnerable to serious complications from COVID-19, which remains rampant in the Bureau of Prisons.  The statutorily required six-year period of supervision provides this Court with the assurance – supported by Mr. Pridgen's own historical record – that he will use that supervision period as a

supportive tool to resume the family he has begun to build with his fiancée and their children. His expressed interest in drug treatment via the RDAP program is an additional reason believe he will have the tools he needs to succeed.

Conclusion:

For the reasons set forth above, Mr. Pridgen respectfully asks the Court to impose a sentence of 54 months of incarceration, followed by six years of supervised release, in accordance with the plea agreement and the factors expressed in 18 U.S.C. §3553(a).

Mr. Pridgen also requests that the Court recommend his participation in the Bureau of Prisons' Residential Drug Abuse Program (RDAP), and placement in a BOP facility located in New England, where he will be able to maintain contact with his Boston-area family members.

Respectfully submitted,
MICHAEL PRIDGEN,
by counsel

*/s/ Julie-Ann Olson*
Julie-Ann Olson
B.B.O.# 661464
Assistant Federal Public Defender
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061
Julie-Ann_Olson@fd.org

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 18, 2020.

*/s/ Julie-Ann Olson*
Julie-Ann Olson